SHANNON LEE BEATTY LLP
Kyung S. Lee (TX Bar No. 12128400)
R.J. Shannon (TX Bar No. 24108062)
Ella A. Cornwall (TX Bar No. 24142801)
2100 Travis, Suite 1525
Houston, Texas 77002
Telephone: (713) 301-4751
Email: klee@shannonleellp.com
        rshannon@shannonleellp.com
        ecornwall@shannonleellp.com


*Counsel for the Debtor and Debtor-In-Possession*

Jeff P. Prostok
State Bar No. 16352500
Emily S. Chou
State Bar No. 24006997
J. Blake Glatstein
State Bar No. 24123295
**VARTABEDIAN HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: (817) 214-4990
Fax: (817) 214-4988
jeff.prostok@vhh.law
emily.chou@vhh.law
blake.glatstein@vhh.law

*COUNSEL FOR SECURED CREDITOR
BAY POINT CAPITAL PARTNERS II, LP*

**THE SOLICITATION MATERIALS ACCOMPANYING THE PLAN OF LIQUIDATION HAVE NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" WITHIN THE MEANING OF 11 U.S.C. § 1125(a). THE DEBTOR EXPECTS TO SEEK AN ORDER OF THE BANKRUPTCY COURT, AMONG OTHER THINGS: (1) APPROVING THE SOLICITATION OF VOTES AS HAVING BEEN IN COMPLIANCE WITH 11 U.S.C. § 1126(b); AND (2) CONFIRMING THE PLAN OF LIQUIDATION PURSUANT TO 11 U.S.C. § 1129.**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Case No. 25-31219-mvl11 |
| ENNIS I-45 11 ACRE, LLC, | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| | ) |

## AMENDED CHAPTER 11 PLAN OF LIQUIDATION
### FILED BY DEBTOR AND BAY POINT CAPITAL PARTNERS II, LP

### SUMMARY OF PLAN[1]

The Debtor Ennis I-45 11 Acre, LLC, with creditor Bay Point Capital Partners, II, LP proposes this amended chapter 11 plan of liquidation pursuant to the provisions of the United States Bankruptcy Code for the resolution of the Debtor's outstanding Claims and Interests. All

---

[1] Capitalized terms used but not defined in Introduction have the meanings ascribed to such terms in Article I.

Holders of Claims and Interests are encouraged to read the Plan and any exhibits or supplements attached hereto or filed by the Debtor in conjunction with the Plan, in their entirety before voting to accept or reject the Plan.

As set forth more fully below, the Plan proposes that the Debtor's main asset—the real property located at 590 S Interstate, I-45, Ennis, Texas 75119—be sold through a two-step sales process: (i) first, the Property would be subjected to a private sale process, to the extent an offer for the Property is received that is acceptable to the Plan Administrator and (ii) second, if no such offer is received, the Property would be sold through an auction process conducted by the Plan Administrator. The Debtor has conducted a six (6) month marketing campaign of the Property through Marcus & Millichap Inc. ("MM"). The result of this campaign is that several offers or expressions of interest were received for the Property, the highest of which was a since-withdrawn offer in the amount of $6,000,000.00.  There have been several other offers or expressions of interest for the purchase of the Property, some exceeding $5,000,000.00 in total value (subject to ordinary adjustments and prorations).

The Plan proposes that MM, as directed by the Plan Administrator, would continue to seek solicitations for the purchase of the Property during the Solicitation Period.  If the Plan Administrator determines that an offer for the Property received during the Solicitation Period is adequate, in the Plan Administrator's business judgment, the Plan Administrator would file a motion with the Court seeking approval of the sale.  If, however, at the conclusion of Solicitation Period, the Plan Administrator has not received an offer for the Property that the Plan Administrator deems to be adequate, the Property would the be subjected to a public auction, during which the Plan Administrator would determine the highest and best offer for the Property. At the conclusion of the auction, the Plan Administrator would file a motion with the Court seeking approval of the sale of the Property to the bidder making the highest and best bid for the property at the auction.

The Plan provides that the net proceeds of the Purchase Price for the Property will be delivered to the Plan Administrator and used to fund the Plan, along with exit financing provided by Bay Point on a first priority, priming secured basis. After the payment of Allowed Administrative Claims, Allowed Priority Tax Claims, and Other Secured Tax Claims, and reserving the Plan Administration Reserve, the Remaining Cash will be held by the Plan Administrator in an interest-bearing account pending the resolution of the Equitable Subordination Litigation. Upon resolution of the Equitable Subordination Litigation, the Plan Administrator shall distribute the Remaining Cash according to the Distribution Waterfall to the Holders of Claims in Class 2 (REH Secured Claim), Class 3 (Bay Point Secured Claim), Class 4 (General Unsecured Claims), Class 5 (REH Subordinated Claim), and/or Class 6 (Interests).

The Plan Administrator will effectuate the windup of the Debtor's business according to the Plan, serve as distribution agent, and investigate, and if appropriate, pursue the Retained Actions. Any proceeds from the Retained Actions will be held by the Plan Administrator in the Plan Administration Reserve until the Plan Administrator determines additional distributions can be made or final distributions are made under the Plan, at which time the Plan Administrator will distribute any excess from the Plan Administration Reserve according to the Distribution Waterfall.

**PLEASE READ THE PLAN CAREFULLY WITH RESPECT TO HOW YOUR RIGHTS MAY BE AFFECTED.**

## ARTICLE I
## DEFINITIONS AND CONSTRUCTION OF TERMS

### A. Defined Terms

1. ***Administrative Claim*** means any Claim constituting a cost or expense of administration of the Chapter 11 Case under Bankruptcy Code section 503(b) and that is entitled to priority under Bankruptcy Code section 507(a), including, *inter alia*, any actual and necessary expenses of preserving the estate, and all fees and charges assessed against the bankruptcy estate under Chapter 123 of Title 28, United States Code.

2. ***Affiliate*** has the meaning set forth in Bankruptcy Code section 101(2).

3. ***Allowed*** means any Claim or Interest: (a) that has been listed in the Debtor's Schedules as liquidated in amount that is not disputed or contingent, and for which no contrary Proof of Claim has been filed or  to which no objection has been filed; (b) expressly allowed (i) by a stipulation with the Plan Administrator executed after the Confirmation Date and, if necessary, approved by the Court regarding the amount and nature of such Claim or (iii) in any contract or other agreement entered into or assumed in connection with the Plan; (c) related to a rejected executory contract or unexpired lease that is (i) not a Disputed Claim or (ii) has been allowed by a Final Order; or (d) expressly allowed by a Final Order or pursuant to the Plan.

4. ***Allowed Claim*** means a Claim that is Allowed.

5. ***Avoidance Actions*** means any and all Causes of Action which a trustee, debtor in possession, the Estate or other appropriate party in interest may assert under Bankruptcy Code sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 (other than those which are released or dismissed as part of and pursuant to the Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.

6. ***Bankruptcy Code*** means Title 11 of the United States Code, as amended from time to time.

7. ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as amended from time to time and made applicable to the Chapter 11 Case.

8. ***Bay Point*** means Bay Point Capital Partners II, LP, a Delaware limited partnership and the holder of the Note issued by the Debtor to such entity dated August 22, 2023, in the face amount of $4,000,000.00.

9. ***Bay Point Secured Claim*** means the Secured Claim held by Bay Point in the amount determined according to Bankruptcy Code section 506.

10. ***Business Day*** means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

11.     ***Cash*** means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and cash equivalents, as applicable.

12.     ***Causes of Action*** means any and all actions, Claims, rights, defenses, third party claims, damages, executions, demands, crossclaims, counterclaims, suits, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, Disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, including, but not limited to, the Avoidance Actions.

13.     ***Chapter 11 Case*** means the chapter 11 case filed by the Debtor on the Petition Date pending as Case No. 25-31219-mvl11 before the Court.

14.     ***Claim*** has the meaning set forth in Bankruptcy Code section 101(5).

15.     ***Claims Objection Deadline*** means the deadline for objecting to filed Proofs of Claims or scheduled claims, which shall be the later of the following (a) the 120th day after the later of the Effective Date and the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, and (b) the 30th day after the Equitable Subordination Litigation is resolved by a Final Order. Such deadline for objecting may also be extended in accordance with Article VII.C.

16.     ***Claimant*** means the Holder of a Claim.

17.     ***Class*** means a category of Holders of Claims or Interests as classified in the Plan.

18.     ***Confirmation Date*** means the date on which the Court enters the Confirmation Order.

19.     ***Confirmation Hearing*** means the hearing at which the Court will consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

20.     ***Confirmation Order*** means the order of the Court confirming the Plan.

21.     ***Court*** means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or in the event such court ceases to exercise jurisdiction over the Chapter 11 Case, such court as may have jurisdiction with respect to the liquidation of Debtor under Chapter 11 of the Bankruptcy Code.

22.     ***Cure Costs*** means the payment of Cash by the Purchaser necessary to cure a default of an executory contract or unexpired lease pursuant to Bankruptcy Code section 365(b).

23.     ***Debtor*** means Ennis I-45 11 Acre, LLC.

24.     ***Disallowed*** means, with respect to any Claim or Interest, that such Claim or Interest: (a) has been withdrawn by agreement of the Debtor and the Holder thereof; (b) has been

withdrawn by the Holder thereof; (c) has been disallowed by Final Order; or (d) specified in a provision of the Plan not to be Allowed.

25.    **Disallowed Claim** means a Claim, or any portion thereof, that is Disallowed.

26.    **Disclosure Statement** means the disclosure statement for the Plan, as the Disclosure Statement may be amended, supplemented or otherwise modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and applicable law.

27.    **Disputed** means, with respect to any Claim or Interest, any Claim or Interest that is not Allowed or Disallowed.

28.    **Disputed Claim** means a Claim, or any portion thereof, that is Disputed. Under the Plan, a Claim that has been neither Allowed nor Disallowed shall be considered a Disputed Claim.

29.    **Distribution Agent** means the Plan Administrator who shall make Distributions and transfers in accordance with the Plan.

30.    **Distribution Waterfall** has the meaning set forth in Article III.C.ii of this Plan.

31.    **Effective Date** means the first Business Day following the date on which all conditions to consummation set forth in Article VIII.B have been satisfied or waived pursuant to Article VIII(C).

32.    **Effective Date Obligations** means the distributions contemplated under the Plan to occur on or promptly after the Effective Date, including distributions to Administrative Claims and any Class 1 Other Secured Claims.

33.    **Entity** has the meaning set forth in Bankruptcy Code section 101(15).

34.    **Equitable Subordination Litigation** means the adversary proceeding styled *Bay Point Capital Partners II, LP v. InterBank et al.*, Case No. 25-03063-mvl.

35.    **Estate** means the estate of the Debtor as set out in section 541 of the Bankruptcy Code.

36.    **Estate Assets** means all legal or equitable interests as defined in Bankruptcy Code section 541 or the Plan belonging to the Estate.

37.    **Exit Financing** has the meaning ascribed to the term in Section ____.

38.    **Final Decree** means the decree contemplated under Bankruptcy Rule 3022.

39.    **Final Order** means an order or judgment of the Court as entered on the docket in the Chapter 11 Case, or other court of competent jurisdiction, the operation or effect of which has not been stayed, reversed or amended, and as to which order or judgment (or any reversal, modification or amendment thereof) the time to appeal or seek review or rehearing has expired

and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order, shall not cause an order not to be a Final Order.

40.   ***General Unsecured Claim*** means an Unsecured Claim which is not (a) entitled to priority under the Bankruptcy Code or (b) subordinated under Bankruptcy Code section 510.

41.   ***Holder*** means a Person or an Entity holding a Claim against or an Interest in the Debtor.

42.   ***Impaired*** means, with respect to a Claim or Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

43.   ***Insider*** has the meaning set forth in section 101(31) of the Bankruptcy Code.

44.   ***Interest*** means any equity security (as defined in Bankruptcy Code section 101(16)) of the Debtor, including, *inter alia*, any rights arising from the issued and outstanding membership interest or the right to purchase membership interest in the Debtor.

45.   ***Lien*** has the meaning set forth in Bankruptcy Code section 101(37), and, with respect to any asset, includes, *inter alia*, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

46.   ***Other Secured Claim*** means any Secured Claim against the Debtor, including a Claim of a governmental unit for the payment of *ad valorem* real property taxes that is secured by property of the Estate. For avoidance of doubt, Other Secured Claim does not include the REH Secured Claim or the Bay Point Secured Claim.

47.   ***Person*** has the meaning set forth in section 101(41) of the Bankruptcy Code.

48.   ***Petition Date*** means April 1, 2025, the date of filing of the Chapter 11 Case.

49.   ***Plan*** means this chapter 11 plan of liquidation, as amended, modified, or supplemented from time to time, together with all addenda, exhibits, schedules, supplements or other attachments.

50.   ***Plan Administrator*** means the individual or entity appointed under the Plan to implement and oversee the terms of the Plan. The Plan Administrator and the terms of the Plan Administrator's engagement shall be disclosed in the Plan Supplement.

51.   ***Plan Administration Reserve*** means the Cash held by the Plan Administrator to fund costs of administering the Plan and estimated quarterly U.S. Trustee fees in the amount of (a) $125,000.00 from the Sale Proceeds and (b) the proceeds of any Retained Actions retained under the Plan.

52.     ***Plan Supplement*** means any supplement to this Plan that is filed with the Court prior to the Confirmation Hearing.

53.     ***Post-Confirmation Costs*** means the costs and expenses of the Plan Administrator in fulfilling the duties of the Plan Administrator upon appointment, to the extent the cash flow from operating the Property is insufficient to pay such expenses, with such costs and expenses not to exceed $75,000.00 in the aggregate.

54.     ***Private Sale*** means the sale of the Property to the Purchaser pursuant to sections 363 and 1123(b)(4) of the Bankruptcy Code.

55.     ***Property*** means that certain real property and improvements located at 590 S Interstate, I-45, Ennis, Texas 75119.

56.     ***Priority Tax Claim*** means any Claim entitled to priority in payment pursuant to Bankruptcy Code sections 502(i) and 507(a)(8).

57.     ***Professional*** means any professional employed in the Chapter 11 Case pursuant to Bankruptcy Code sections 327, 328 or 1103 or any professional or other Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Bankruptcy Code section 503(b)(4).

58.     ***Professional Fee Claim*** means a Claim by a Professional seeking an award by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Bankruptcy Code sections 330 or 331, with such claim being capped at $100,000.00 or $0.50 per $1.00 invoiced for Professional, whichever is less; provided, however, that Professional Fee Claim shall not include the commission and other amounts due and payable to MM.

59.     ***Proof of Claim*** means a proof of Claim filed against the Debtor.

60.     ***Property*** means that certain real property located at 590 S Interstate, I-45, Ennis, TX 75119, as further described in the Purchase Agreement

61.     ***Purchaser*** means the buyer of the Property under the Sales Procedures.

62.     ***Purchase Price*** means the total purchase price for the Property, net of all routine and ordinary closing costs.

63.     ***Quarterly Fees*** means fees payable to the U.S. Trustee.

64.     ***REH*** means Real Estate Holdings, LLC, an Oklahoma series limited liability company acting for the benefit of its Series C, InterBank, and the holder of the promissory note issued by the Debtor to Interbank, dated July 18, 2022, in the face amount of $7,000,000.00.

65.     ***REH Secured Claim*** means the Secured Claim of REH in the amount determined according to Bankruptcy Code section 506 unless subordinated through the Equitable Subordination Litigation.

66.      ***REH Subordinated Claim*** means the Claim(s) held by REH in the event and to the extent subordinated in the Equitable Subordination Litigation.

67.      ***Related Party*** means with respect to a Person, that Person's current and former, direct or indirect, directors, members, managers, officers, control persons, equity holders, partners, participants, managed accounts or funds, fund advisors or managers, investment managers, management companies, affiliates, predecessors, successors, assigns, subsidiaries, principals, employees, agents, trustees, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors, but does not include Professionals employed by the Debtor.

68.      ***Remaining Cash*** means the Cash held by the Plan Administrator to make payments under the Distribution Waterfall and defined in Article III.C.i of this Plan.

69.      ***Retained Actions*** means all Causes of Action that are property of the Estate other than Causes of Action and Avoidance Actions that are expressly released, enjoined, or exculpated under the Plan. All such Causes of Action will be under the exclusive control of the Plan Administrator as of the Effective Date.

70.      ***Sale*** means the sale of the Property.

71.      ***Sales Procedures*** means the procedures governing the sale of the Property as set out in Exhibit A.

72.      ***Sale Proceeds*** means the net sale proceeds from the Purchase Price after deductions for closing costs, payment of ad valorem taxes secured by liens on the Property, prorations according to the Purchase Agreement, payment of the Bay Point Exit Financing Secured Claim, and other amounts authorized to be paid in connection with the closing of the Sale of the Property.

73.      ***Schedules*** means, collectively, the (a) schedules of assets and liabilities and (b) statements of financial affairs filed pursuant to section 521 of the Bankruptcy Code filed at ECF Nos. 46, 63, and 106 in the Chapter 11 Case.

74.      ***Secured Claim*** means: (a) any Claim that is secured by a Lien on property in which the Estate has an interest, which Liens are valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under Bankruptcy Code section 553, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a); and (b) any Claim which is Allowed under the Plan as a Secured Claim.

75.      ***Solicitation Period*** means a period of four (4) weeks after entry of the Order confirming the Plan.

76.      ***Unclaimed Property*** means any distribution of Cash or any other property made to the Holder of an Allowed Claim pursuant to the Plan that is returned to the Debtor or the Plan Administrator as undeliverable and no appropriate forwarding address is received prior to the date on which the Final Decree is entered in the Chapter 11 Case.

77.    ***Unimpaired*** means a Claim that is not Impaired within the meaning of Bankruptcy Code section 1124.

78.    ***Unsecured Claim*** means a Claim that is not a Secured Claim, other than Administrative Claims, Other Secured Claims, Priority Tax Claims, and Professional Fee Claims.

79.    ***U.S. Trustee*** means the United States Trustee for Region 6.

**B.**    **Exhibits and Schedules.**  All exhibits and schedules to the Plan are incorporated into and are a part of the Plan.

**C.**    **Rules of Interpretation and Construction.**  For purposes of the Plan, (a) any reference in the Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, modified, or supplemented; (b) unless otherwise specified, all references in the Plan to sections, articles, and exhibits are references to sections, articles, or exhibits to the Plan; (c) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety and not to any particular portion of the Plan; (d) captions and headings contained in the Plan are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of the Plan; (e) wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and neutral gender; and (f) the rules of construction outlined in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply to the Plan. In addition, unless otherwise indicated herein, (i) all references to dollars are to United States dollars and (ii) all amounts set forth in the Plan, including, inter alia, with respect to shares, dollar amounts and percentages, shall be subject to rounding and other immaterial changes.

## ARTICLE II
## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

**A.**    **Allowed Administrative Claims.** Except to the extent that a Holder of an Allowed Administrative Claim agrees to a different treatment, the Holders of Allowed Administrative Claims will receive Cash equal to the unpaid portion of such Allowed Administrative Claim on the later of the (a) the Effective Date, (b) the date on which said Entity becomes a holder of such Allowed Administrative Claim, or (c) such date as such Entity may agree to with the Plan Administrator; *provided*, *however*, that Administrative Claims representing liabilities incurred in the ordinary course of business by the Estate or liabilities arising under other obligations incurred by the Estate whether or not incurred in the ordinary course of business, shall be paid by the Estate in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such transactions.

**B.**    **Administrative Claims Bar Date.** Notwithstanding Bankruptcy Code section 503(a), any person seeking payment of an asserted Administrative Claim under Bankruptcy Code section 503, other than a governmental unit seeking payment of an expense under sections 503(b)(1)(B) or (C), that was incurred on or before the Effective Date but which has not been paid as of the Effective Date, shall be required to file an application for the allowance of final payment of said claim on or before forty-five (45) calendar days after the Effective Date, and any such claim

not filed by that date shall be forever barred and discharged.  The provisions of this Article II shall apply to any Professional applying for the allowance and payment of a Professional Fee Claim.

C.    **Allowed Priority Tax Claims.** Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the Holder of an Allowed Priority Tax Claim and the Plan Administrator, as applicable, each Holder of an Allowed Priority Tax Claim will, in full and final satisfaction of that portion of its Allowed Priority Tax Claim that is due and payable on the Effective Date, either (i) receive Cash equal to the amount of such Allowed Claim on or after the Effective Date or (ii) otherwise be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

Except for the Claims addressed in Article II, all Claims and Interests are classified in the Classes set forth below in accordance with Bankruptcy Code section 1122. A Claim or an Interest is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

**A.  Summary of Classification**

The chart below summarizes the classification of Claims against and Interests in the Debtor:

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 2 | REH Secured Claim | Impaired | Entitled to Vote |
| 3 | Bay Point Secured Claim | Impaired | Presumed to Accept |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | REH Subordinated Claim | Impaired | Entitled to Vote |
| 6 | Interests | Impaired | Entitled to Vote |
| 7 | Bay Point Exit Financing Secured Claim | Unimpaired | Presumed to Accept |

**B.  Treatment of Classes of Claims and Interests**

i.    **Class 1: Other Secured Claims.**

*Classification*: Class 1 consists of the Other Secured Claims.

*Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full satisfaction of such Allowed Other Secured Claim, on the Effective Date, or as soon as reasonably practicable thereafter, each Holder shall receive payment

in an amount equal to such Allowed Other Secured Claim. For the avoidance of doubt, the payment of any Allowed Secured Claims prior to confirmation shall satisfy any such other Secured Claims.

ii.    **Class 2: REH Secured Claim.**

*Classification*: Class 2 consists of the REH Secured Claim.

*Treatment*: Except to the extent that a Holder of an Allowed REH Secured Claim agrees to a less favorable treatment, promptly after the determination of the Equitable Subordination Litigation pursuant to a Final Order, each Holder shall receive payment from Remaining Cash according to the Distribution Waterfall in an amount not to exceed the Allowed amount of such REH Secured Claim. The Lien securing the REH Secured Claim will attach to the Remaining Cash to the same extent, and in the same priority, as to the Property.

iii.    **Class 3: Bay Point Secured Claim.**

*Classification*: Class 3 consists of the Bay Point Secured Claim.

*Treatment*: Except to the extent that a Holder of a Bay Point Secured Claim agrees to a less favorable treatment, promptly after the determination of the Equitable Subordination Litigation pursuant to a Final Order, each Holder shall receive payment from Remaining Cash according to the Distribution Waterfall in an amount not to exceed the Allowed amount of such Bay Point Secured Claim. The Lien securing the Bay Point Secured Claim will attach to the Remaining Cash to the same extent, and in the same priority, as to the Property.

iv.    **Class 4: General Unsecured Claims.**

*Classification*: Class 4 consists of General Unsecured Claims.

*Treatment*: Except to the extent that a Holder of a General Unsecured Claim agrees to a less favorable treatment, promptly after the determination of the Equitable Subordination Litigation pursuant to a Final Order, each Holder shall receive payment from the Remaining Cash according to the Distribution Waterfall in an amount not to exceed the Allowed amount of such General Unsecured Claim. In addition, Class 4 General Unsecured Claims, together with Class 5 REH Subordinated Claim, will receive a pro-rata share of the GUC Fund as defined in Article VI.E.

v.    **Class 5: REH Subordinated Claim.**

*Classification*: Class 5 consists of the REH Subordinated Claim.

*Treatment*: Except to the extent that a Holder of a REH Subordinated Claim agrees to a less favorable treatment, promptly after the determination of the Equitable Subordination Litigation pursuant to a Final Order, each Holder shall receive payment from the Remaining Cash according to the Distribution Waterfall in an amount not to exceed the Allowed amount of such REH Subordinated Claim. In addition, Class 5 REH Subordinated Claim, together with Class 4 General Unsecured Claims, will receive a pro-rata share of the GUC Fund as defined in Article VI.E.

      **vi.**        <u>**Class 6: Interests**</u>.

    *Classification*: Class 6 consists of all Interests in the Debtor.

    *Treatment*: Except to the extent that a Holder of an Interest agrees to a less favorable treatment, promptly after the determination of the Equitable Subordination Litigation pursuant to a Final Order, each Holder shall receive payment from the Remaining Cash according to the Distribution Waterfall in an amount not to exceed the Allowed amount of such Interest.

      **vii.**        <u>**Class 7: Bay Point Exit Financing Secured Claim.**</u>

    *Classification:* Class 7 consists of the Bay Point Exit Financing Secured Claim.

    *Treatment*: Except to the extent that a Holder of a Bay Point Exit Financing Secured Claim agrees to a less favorable treatment, in full satisfaction of such Bay Point Exit Financing Secured Claim, at the closing of the sale of the Property, each Holder shall receive payment in an amount equal to such Bay Point Exit Financing Secured Claim plus interest and any other amount due under the terms of this Plan.

    **C. Distribution Waterfall.**

      **i.**        <u>**Calculation of Remaining Cash**</u>. For purposes of this Plan and the Distribution Waterfall set out herein, the term "Remaining Cash" shall mean the Cash retained by the Plan Administrator and distributable pursuant to the Distribution Waterfall, consisting of:

        1. The Sales Proceeds plus remaining Cash generated from operations after the Effective Date and prior to the closing of the sale of the Property, <u>less</u> (a) Effective Date Obligations to the extent not paid by Exit Financing or through Cash otherwise available to the Plan Administrator pursuant to the terms of this Plan, (b) the amounts due to Bay Point on account of the Exit Financing, to the extent not paid at the closing of the sale of the Property; and (c) the Plan Administration Reserve in the amount of $125,000.00; <u>plus</u>

        2. Any unused Plan Administration Reserve at the time of final distributions according to the Distribution Waterfall; <u>plus</u>

        3. Any proceeds, including interest earned, from any Cash held by the Debtor prior to final distribution according to the Distribution Waterfall.

      **ii.**        <u>**Distribution of Remaining Cash According to Priority**</u>. The Remaining Cash shall be distributed as set out in the following table (a) promptly following the conclusion of the Equitable Subordination Litigation by a Final Order and (b) through any subsequent distributions determined by the Plan Administrator. The claims in each tranche must be satisfied in the full amount of the Allowed Claims prior to any funds being distributed to a subsequent tranche. If Holders of Interests are entitled to a distribution, the Remaining Cash will be distributed to Holders of Interests pro rata based on the Interests held. If the Remaining Cash is sufficient to make a distribution to a class but not satisfy all claims, the distributions to Holders shall be pro rata based on the amount of the Claim or Interest.

| Tranche | Claims within Tranche |
|---------|----------------------|
| A | Allowed REH Secured Claim, if any, to the extent not subordinated pursuant to the Equitable Subordination Litigation |
| B | Allowed Bay Point Secured Claim, if any |
| C | Allowed General Unsecured Claims and Allowed REH Subordinated Claim, if any, unless as a result of the Equitable Subordination Litigation the Allowed REH Subordinated Claim is subordinated to the General Unsecured Claims, in which such case the General Unsecured Claims shall be paid in full before the Allowed REH Subordinated Claim is paid<br><br>In addition, this Tranche alone will receive a pro-rata share of the GUC Fund as defined in Article VI.E |
| D | Allowed Interests |

Such priority scheme is the "Distribution Waterfall" as used in this Plan.

## ARTICLE IV
## ACCEPTANCE OR REJECTION OF THE PLAN

**A.** **Presumed Acceptance by Unimpaired Classes.** Holders of Claims in Class 1 are Unimpaired under the Plan and therefore are conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code.

**B.** **Impaired Classes of Claims Entitled to Vote.** Holders of Claims in Classes 2, 3, 4, 5, and 6 are Impaired and are entitled to vote to accept or reject the Plan.

**C.** **Elimination of Vacant Classes.** Any Class of Claims against, or interests in, the Debtor that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfied section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

**D.** **Voting Classes; Presumed Acceptance by Non-Voting Classes.** If a class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

**E.** **Cramdown.** If all applicable requirements for confirmation of this Plan are met as set forth in Bankruptcy Code section 1129(a)(1) through (16) except subsection (a)(8) thereof, the Debtor intends to request confirmation of this Plan in accordance with Bankruptcy Code section 1129(b), notwithstanding the failure to satisfy the requirements of section 1129(a)(8).

## ARTICLE V
## EXECUTORY CONTRACTS AND LEASES

**A.**     **Executory Contracts and Unexpired Leases.**  Except as otherwise provided herein, on the Effective Date, each executory contract and unexpired lease not previously rejected, assumed, or assumed and assigned (e.g., in connection with the Sale) shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code.

**B.**     **Rejection Claims.** If the rejection of an executory contract or unexpired lease pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor or any property to be distributed under the Plan, unless a proof of claim is filed with the Court and served upon the Plan Administrator on or before the date that is thirty (30) calendar days after the Effective Date.

## ARTICLE VI
## MEANS OF IMPLEMENTATION OF THE PLAN

**A.**     **Sale of Property.**  The Plan Administrator shall sell the Property pursuant to the Sale Procedures attached hereto as Exhibit A.

**B.**     **Management of Property.**  The Plan Administrator shall manage the Property in a manner determined by the Plan Administrator in the Plan Administrator's sole discretion, including without limitation by employing a management company, until the closing of the sale of the Property. The Plan Administrator shall use the revenues generated by operating the Property from the Effective Date through the closing of the sale of the Property to fund the costs of operating the Property, to the extent available to pay for the Plan Administrator's costs, and to the extent possible pay and satisfy the Effective Date Obligations. If, in the Plan Administrator's discretion, the Plan Administrator has sufficient Cash to fund the Plan Administrative Reserve and pay the operating costs of the Property prior to the closing of the sale of the Property, the Plan Administrator may pay the Bay Point Exit Financing Secured Claim.

**C.**     **Appointment of Plan Administrator; Powers and Duties**. The Plan Administrator shall be appointed on the Effective Date. The Plan Administrator shall administer the Debtor and its assets in accordance with this Plan, and shall be responsible for, among other things, (a) operating the Property and being accountable for the funds of the post-Effective Date Debtor, (b) making distributions required under this Plan, (c) investigating and pursuing the Retained Actions, and (d) marketing and selling the Property. From and after the Effective Date and continuing through the final distributions of all funds received by the Plan Administrator, the Plan Administrator shall: (a) have and be entitled to exercise all rights and powers of the Debtor; (b) possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Chapter 11 Case and, in connection therewith, shall (i) have the right to appear and be heard on matters brought before the Court or other courts, (ii) be entitled to notice and opportunity for hearing on all such issues, (iii) participate in all matters brought before the Court, and (iv) receive notice of all applications, motions, and other papers and pleadings filed in the Court; (c) have the authority to act as and for the Debtor in all adversary proceedings and contested matters pending in the Court and in all actions and proceedings pending

elsewhere; (d) have the power to prosecute, compromise and settle the Retained Actions; (e) have the right to object to Claims; (f) have the authority to retain such personnel or professionals (including, without limitation, legal counsel, financial advisors or other agents) as it deems appropriate and compensate such personnel and professionals as it deems appropriate, all without prior notice to or approval of the Court; and (g) borrow money for such purposes as financing the costs of prosecuting the Retained Actions, on terms and conditions it deems appropriate, upon Court approval after notice and hearing

**D.**     **Retained Actions.** Other than Causes of Action expressly released under this Plan, all Causes of Action constituting property of the Estate shall remain property of the Debtor under the control of the Plan Administrator and shall be Retained Actions. Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Plan Administrator will have the right to retain, enforce and prosecute such Retained Actions against any Person, Entity, Affiliate or Insider of the Debtor, that arose before the Effective Date. The Debtor shall provide to the Plan Administrator copies of all its books and records as may be necessary, in the Plan Administrator's reasonable discretion, to identify, analyze and prosecute such Actions. Any proceeds of such Retained Actions shall constitute part of the Plan Administration Reserve until the earlier of (a) the final distributions under this Plan or (b) the Plan Administrator determines that such amounts may be distributed according to the Distribution Waterfall.

**E.**     **Exit Financing.**  On the Effective Date, Bay Point shall extend financing (the "***Exit Financing***") sufficient to pay, in full, all Effective Date Obligations that remain due and owing plus Post-Confirmation Costs, as and when such costs become due and payable, and $100,000 reserved (the "***GUC Fund***") to be shared pro-rata among Tranche C as defined in the Distribution Waterfall. Bay Point shall be entitled to (x) charge interest on any amounts advanced as Exit Financing at that rate set forth in 28 U.S.C. § 1961 (i.e., the federal post-judgment interest rate) on the date that any such Exit Financing is extended to the Debtor; (y) collect reasonable attorney fees incurred by Bay Point in connection with the Exit Financing; and (z) recoup other reasonable out-of-pocket expenses that may be incurred by Bay Point in connection with the Exit Financing. The Exit Financing shall be deemed the Bay Point Exit Financing Secured Claim and shall be repaid pursuant to terms of Section 5.14 of this Plan.

### ARTICLE VII
### CLAIMS AND DISTRIBUTIONS

**A.**     **Distribution Agent.** On the Effective Date and thereafter, the Plan Administrator shall serve as distribution agent for all distributions required under the Plan.

**B.**     **Time, Manner, and Delivery of Distributions.** The Plan Administrator shall make distributions, whether final or interim, promptly after the Equitable Subordination Litigation is resolved pursuant to a Final Order or prior thereto, if so provided for under the provisions of this Plan. Subsequent distributions, if any, shall be made as promptly as reasonably practical. Distributions to Holders of Allowed Claims or Interests shall be made at (a) the address of each Holder as set forth in the Schedules filed with the Court unless superseded by the address set forth on Proof(s) of Claim filed by such Holder, or (b) the last known address of such Holder if no proof of Claim is filed and if the Plan Administrator has been notified in writing of a change of address. If any distribution is returned as undeliverable, the Plan Administrator may, in its discretion, make

such efforts to determine the current address of the Holder of the Claim or Interest with respect to which the distribution was made as the Plan Administrator deems appropriate, but no distribution to any Holder shall be made unless and until the Plan Administrator has determined the then-current address of the Holder, at which time the distribution to such Holder shall be made to the Holder without interest. Amounts in respect of any undeliverable distributions made through or by the Plan Administrator shall be returned and held in trust by the Plan Administrator until such distributions are claimed or are deemed to be Unclaimed Property under section 347(b) of the Bankruptcy Code or otherwise distributed as set forth herein.

**C.** **Claims Objection.** The Plan Administrator shall file, prosecute, litigate, settle or withdraw objections to any Claim. Objections to Claims shall be filed by the Claims Objection Deadline unless extended by the Court or agreement with the holder of a Claim. No party in interest, including the Debtor, shall have the authority to file, prosecute, litigate, settle or withdraw objections to any Claim.

**D.** **Withholding Taxes.** Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Persons holding Claims shall have an affirmative duty and be required to provide any information necessary to effect the withholding of such taxes, including its federal tax identification number or social security number.

**E.** **Setoffs.** Except as otherwise provided for herein, the Plan Administrator may, but shall not be required to, set off against any Claim and the distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or its Estate may have against the Holder of such Claim, but neither the failure to do so nor the allowance of a Claim hereunder shall constitute a waiver or release by the Debtor, the Plan Administrator or the Estate of any Claim they may have against such Creditor; *provided* that such right of setoff shall be subject to this Article VII and in no event shall the Debtor or the Plan Administrator set off, or be permitted to set off, against any Claims Allowed under this Plan.

**F.** **Unclaimed Distributions.** All property distributed on account of Claims must be claimed prior to the date on which the Court enters the Final Decree. All Unclaimed Property will be retained by and will vest in the Escrow Account for distribution to Holders of Allowed Claims in Classes 2 and 3. Pursuant to section 1143 of the Bankruptcy Code, all Claims in respect of Unclaimed Property shall be deemed Disallowed and the Holder of any Claim Disallowed in accordance with this Article VII(I) will be forever barred, expunged, estopped and enjoined from asserting such Claim in any manner against the Debtor, the Plan Administrator, or the Purchaser, or their respective assets.

**G.** **De Minimis Distribution.** No Cash payment of less than twenty-five ($25.00) dollars shall be made to any Holder of an Allowed Claim on account of such Allowed Claim.

**H.** **No Fractional Distributions.** Cash distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash remains undistributed as a result of

the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property pursuant to Article VII(I).

**I.**     **Interest on Claims.** No interest shall accrue on Claims unless, and only to the extent that, the Plan specifically provides otherwise.

# ARTICLE VIII
## CONDITIONS TO CONSUMMATION OF THE PLAN

**A.**     **Confirmation Order.**   The Confirmation Order shall not be entered the Plan Supplement and all of the schedules, documents, and exhibits contained therein, and all other schedules, documents, supplements and exhibits to the Plan, if any, shall have been filed.

**B.**     **Conditions to the Effective Date.**   The Plan shall not be consummated, and the Effective Date shall not occur, until the following conditions have occurred:

a. the Confirmation Order shall have been entered and shall not be stayed, vacated, or otherwise rendered ineffective by order of a court of competent jurisdiction;

b. no order of a court shall have been entered and shall remain in effect restraining the Debtor from consummating the Plan.

**C.**     **Effect of Failure of Conditions; Order Denying Confirmation.** If one or more of the conditions specified in Article VIII(B) have not been satisfied, upon notification submitted by the Debtor to the Court: (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) Estate Assets shall revest in the Estate, and (d) all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; (e) the Purchase Agreement shall become null and void; and (f) the Estate's obligations with respect to the Claims and Interests shall be as if the Confirmation Order had not been entered.

# ARTICLE IX
## EFFECT OF CONFIRMATION

**A.**     **Discharge.**   Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of the Plan will not discharge Claims against the Debtor.

**B.**     **Status of Property of the Estate After Confirmation**. Confirmation of the Plan shall vest the Property of the Estate in the Debtor under the control of the Plan Administrator free and clear of all claims and liens except as expressly provided in the Plan, provided that if the Plan is not substantially consummated, the property of the Estate shall revest in the estate upon conversion to chapter 7 or entry of an order revoking confirmation of the Plan.

**C.**     **Binding Effect of the Plan.** This Plan shall be binding upon and inure to the benefit of the Debtor, the Estate, the Plan Administrator, the distribution agent, the Purchaser, any Holder of any Claim or Interest treated herein or any Person named or referred to in the Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns,

agents, officers and directors, and, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan.

**D.    Injunction.  Except as otherwise provided herein, on the Effective Date, the Confirmation Order shall constitute an injunction permanently enjoining any Person (excluding the Plan Administrator) from taking any act to take possession or exercise control over (a) the Sale Proceeds, Effective Date Obligations, Plan Administration Reserve, or Remaining Cash except or (b) the Retained Actions, except pursuant to a settlement or sale of such Retained Actions by the Plan Administrator.**

**E.    Duration of Injunctions and Stays.  Unless otherwise provided in this Plan, in the Confirmation Order, or in a Final Order of the Court, all injunctions and stays entered during the Chapter 11 Case and in existence on the Confirmation Date shall remain in full force and effect in accordance with their terms; and (ii) the automatic stay arising under Bankruptcy Code section 362 shall remain in full force and effect subject to Bankruptcy Code section 362(c).**

## ARTICLE X
## RETENTION OF JURISDICTION

The Court shall retain jurisdiction of all matters arising under, or related to, these proceedings, including, but not limited to:

   a.   ensuring that the Plan is carried out;

   b.   considering any modification of the Plan under Bankruptcy Code section 1127;

   c.   hearing and determining all controversies, suits, and disputes that may arise in connection with the interpretation of the Plan;

   d.   hearing and determining all objections to claims, controversies, suits, and disputes that may be pending as of or initiated after the Effective Date;

   e.   hearing and determining all claims, controversies, suits, and disputes against the Debtor or that may arise in connection with the interpretation of the Plan;

   f.   hearing and determining all requests for compensation and/or reimbursement of expenses that may be made for fees/expenses incurred before the Effective Date;

   g.   enforcing any Final Order, the Confirmation Order, the Final Decree, and all injunctions contained in those orders;

   h.   entering an order concluding and terminating this Chapter 11 Case;

   i.   correcting any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order;

j.  determining all questions and disputes regarding title to the Property and any other assets of Debtor;

k.  enter a Final Decree in the Chapter 11 Case according to Bankruptcy Rule 3022;

l.  enforcing the provisions set forth in the Plan, the Confirmation Order, any Final Decree, and any Final Order that provides for the adjudication of any issue by the Court; and

m.  entering and implementing such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

### ARTICLE XI
### MISCELLANEOUS PROVISIONS

**A.**   **Additional Documents/Execution of Documents Generally.** On or before substantial consummation of the Plan, the Debtor shall issue, execute, deliver, and file with the Court or record any agreements and other documents consistent with, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

**B.**   **Entire Agreement.** The Plan (and all exhibits thereto and the Plan Supplement) sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents. The Debtor shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

**C.**   **Final Order.** Except as otherwise provided in the Plan, any requirement in the Plan for a Final Order may be waived: (a) by the Purchaser, in its sole discretion; or (b) after the Effective Date, by the Plan Administrator upon written notice to the Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

**D.**   **Governing Law.** Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed and construed and enforced in accordance with the laws of the State of Texas.

**E.**   **No Admissions or Waivers.** Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission or waiver by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

**F.**   **Notices.** Any notice required or permitted to be provided under this Plan to the Debtor, or any request for information with respect to the Plan, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

Ennis I-45 11 Acre, LLC
c/o Shannon Lee Beatty LLP
Attn: Kyung Lee, R. J. Shannon
2100 Travis Street, STE 1525
Houston, TX 77002

Bay Point Capital Partners II, LP
c/o Vartabedian Hester & Haynes LLP
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102

**G.** **Plan Modification.** The Debtor may amend or modify the Plan in accordance with Bankruptcy Code section 1127 or as permitted at any time prior to the Confirmation Date.

**H.** **Post-Confirmation Operating Reports**. The Plan Administrator shall file quarterly operating reports as required by the U.S. Trustee until such time as a Final Decree or other order is entered under section 350(a) of the Bankruptcy Code closing the Chapter 11 Case.

**I.** **Quarterly Fees.** Quarterly Fees due shall be paid on or after the Effective Date from the Plan Administration Reserve.

**J.** **Severability.** Should the Court determine, prior to the Confirmation Date, that any provision of the Plan is either illegal on its face or illegal as applied to any Claim or Interest, such provision shall be unenforceable as to all Holders of Claims or Interests or to the specific Holder of such Claim or Interest, as the case may be, as to which such provision is illegal. Unless otherwise determined by the Court, such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**K.** **Section 1146 Exemption.** To the fullest extent permitted under Bankruptcy Code section 1146(a), the execution, delivery or recording of an instrument of transfer under the Plan, or the revesting, transfer or sale of any real or other property of or to the Debtor shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

**L.** **Solicitation.** The Debtor (and each of its respective officers, directors, employees, consultants, agents, advisors, members, attorneys, accountants, financial advisors, other representatives and Professionals) has, and upon Confirmation of the Plan, shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

**M.** **Withdrawal of the Plan.** The Debtor shall reserve the right, at any time prior to Confirmation of the Plan, to withdraw the Plan. If the Plan is withdrawn, the Plan shall be null and void and have no force and effect. In such event, nothing contained herein shall be deemed to

constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice the rights of the Debtor or any Person in any further proceedings involving the Debtor.

The Debtor requests Confirmation of the Plan under section 1129(a) or section 1129(b) of the Bankruptcy Code.

Dated: January 26, 2026.

**ENNIS I-45 11 ACRE, LLC**

By: */s/ Sonjohn McGaugh*
Name: Sonjohn McGaugh
Title: Authorized Representative