## TERMS, CONDITIONS, AND PROCEDURES FOR THE SALE OF CERTAIN REAL PROPERTY OWNED BY ENNIS I-45 11 ACRE, LLC

1.    **Definitions**[1]

(a)    "***Administrative Expense Claim***" means a Claim for the costs and expenses of administering the Debtor's Bankruptcy Case allowed under §§ 327, 330, 331, 364(c)(1), 503(b), 507(a)(2), 507(b) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses of maintaining and preserving one or more of the Debtor-Owned Properties; and (b) the awarded compensation and reimbursement of expenses for the Debtor's bankruptcy counsel and other professionals.

(b)    "***Affiliate***" shall have the same meaning as is ascribed to such term in 11 U.S.C. § 101(2).

(c)    "***Allowed***" means, (a) with respect to any Claim other than an Administrative Expense Claim, a Claim for which a proof of claim was timely and properly filed or, if no proof of Claim was filed, that was scheduled by the Debtor as being liquidated and undisputed, and as to which: (i) no objection to allowance has been interposed within the applicable period; or (ii) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order; and (b) with respect to any Administrative Expense Claim, a Claim for which (i) a request for payment of such Administrative Expense Claim has been timely and properly filed and (A) no objection to allowance has been interposed within the applicable period; or (B) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order; or (ii) has been otherwise allowed by the Bankruptcy Court.

(d)    "***Auction***" shall mean the auction of the Property conducted in accordance with these Sale Procedures.

(e)    "***Backup Bid***" and "***Backup Bids***" shall have the meanings ascribed to such terms herein.

(f)    "***Backup Bidder***" shall mean a Registered Bidder that is the holder of a Backup Bid.

(g)    "***Bankruptcy Case***" shall mean *In re Ennis I-45 11 Acre, LLC* (Case No. 25-31219-mvl11).

(h)    "***Bankruptcy Code***" shall mean title 11 of the United States Code, as the same may be amended from time to time, effective on the Petition Date.

(i)    "***Bankruptcy Court***" shall mean the court presiding over the Bankruptcy Case.

---

[1] Capitalized terms not otherwise defined in these Sale Procedures shall have the meaning ascribed to such terms in the Debtor's Plan.

1

(j)      "*Bankruptcy Rules*" shall mean, collectively, the Federal Rules of Bankruptcy Procedure, as the same may be amended from time to time, effective on the Petition Date, each such individual rule being a "*Bankruptcy Rule*."

(k)      "*Bay Point*" shall mean Bay Point Capital Partners II, LP.

(l)      "*Business Day*" shall mean any day other than a Saturday, Sunday, or other day on which commercial banks in Dallas, Texas are authorized or required by law to close.

(m)      "*Buyer*" shall mean a Winning Bidder that consummates a Sale of one or more of the Properties.

(n)      "*Cash*" shall mean lawful currency of the United States of America.

(o)      "*Claim*" has the meaning ascribed to such term in 11 U.S.C. § 101(5), as the same has been, or may be, asserted against the Debtor.

(p)      "*Closing*" shall mean the action of consummating a Sale of the Property for which a Winning Bid has been declared in accordance with the terms of these Sale Procedures, including, without limitation, the final and unconditional transfer of the Purchase Price to the Plan Administrator by the Winning Bidder and the final and unconditional transfer of the ownership of the Property to the Buyer, and the full and authorized execution of any documents with respect thereto.

(q)      "*Closing Deadline*" shall have the meaning ascribed to such term in Section 12(c) of these Sale Procedures.

(r)      "*Credit Bid*" shall have the meaning ascribed to such term in Section 10 of these Sale Procedures.

(s)      "*Credit Bidding*" shall mean the process of submitting a Credit Bid.

(t)      "*Debtor*" means Ennis I-45 11 Acre, LLC, a debtor-in-possession under the Bankruptcy Code in its Bankruptcy Case.

(u)      "*Defaulting Bidder*" means a Registered Bidder, including any Winning Bidder(s) and Backup Bidder(s), that (i) breaches its obligations under a Purchase and Sale Agreement; or (ii) attempts to revoke its bid (including any Winning Bid and/or Backup Bid) after or prior to the execution of a Purchase and Sale Agreement; or (iii) refuses to execute a Purchase and Sale Agreement, and/or any other agreement reasonably required to consummate the Sale of the Property associated with the Registered Bidder's bid.

(v)      "*Deposit*" and "*Deposits*" shall have the meanings ascribed to such terms in Section 7(b) of these Sale Procedures.

(w)      "*Disallowed*" means the determination by a court of competent jurisdiction that a Claim, or any part thereof, to which an objection to the allowance thereof has been adjudicated through the entry of a Final Order is not Allowed, in whole or in part, with respect to the amount

2

claimed and/or the existence of a valid Lien securing all or any part of such Claim; *provided that*, for the avoidance of doubt, only that part of such Claim that is not Allowed through such Final Order shall be "Disallowed."

(x)    "***Escrow Agent***" shall mean any escrow agent retained by the Debtor, at the direction of the Plan Administrator, to assist with facilitating a Sale through the Sale Process; *provided that*, to the extent that the Plan Administrator does not select or otherwise cause a Debtor to engage an escrow agent, the term "***Escrow Agent***" shall mean the Plan Administrator or any other person engaged by a Debtor or the Plan Administrator to hold any funds in connection with the Sale Process and/or these Sale Procedures.

(y)    "***Estate***" means the bankruptcy estate of the Debtor, as created on the Petition Date pursuant to section 541 of the Bankruptcy Code.

(z)    "***Estate Professional***" a professional retained by the Debtor or its Estate pursuant to 11 U.S.C. § 327.

(aa)   "***Final Order***" means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed, reversed, or vacated, and that is no longer subject to appeal, certiorari proceeding, or other proceeding for review or rehearing.  The possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, may be filed relating to an order will not cause it not to be a Final Order.

(bb)   "***Gross Sale Proceeds***" means the gross proceeds realized from a Sale (excluding the amount of any Credit Bid made pursuant to these Sale Procedures).

(cc)   "***Initial Deposit***" shall have the meaning ascribed to such term in Section 7(a) of the Sale Procedures.

(dd)   "***Lien***" has the same meaning as is ascribed to such term in 11 U.S.C. § 101(37), and includes charges, bills, encumbrances, mortgages, deeds of trust, security interests, and any other legally cognizable security device of any kind.

(ee)   "***Listing Broker***" Skyler Henderson of Marcus & Millichap, Dorsey-Henderson Team or, to the extent that Mr. Henderson is not retained by the Debtor after entry of the Confirmation Order on terms acceptable to the Plan Administrator, such other real estate broker that may be selected and identified by the Plan Administrator in its sole and absolute discretion but provided that such retention agreement is no less favorable to Debtor than the terms

(ff)   "***Listing Broker Compensation Amount***" means that amount of compensation and/or expense reimbursement that the Listing Broker is entitled to pursuant to (i) an agreement entered into with the Debtor prior to the entry of the Confirmation Order that has been approved by the Bankruptcy Court; or (ii) an agreement entered into with Plan Administrator, on behalf of the Debtor, after entry of the Confirmation Order; *provided that* under no circumstances shall the total aggregate compensation paid to the Listing Broker and any Buyer's Broker for the Sale exceed six percent (4.50%) of the Gross Sale Proceeds of the Sale.

(gg) "***Net Sale Proceeds***" means the Gross Sale Proceeds, less the costs and expenses incurred in connection with a Sale chargeable to the seller, including without limitation, the Listing Broker Compensation Amount, any closing costs (including any fees of an Escrow Agent), and documentary costs, if any; *provided that*, for the avoidance of doubt, Net Sale Proceeds shall not include the non-cash amount of any Credit Bid made pursuant to the terms of these Sale Procedures; and *further provided that* nothing contained herein shall require a Debtor, a Buyer, or any other person to pay any Transfer Taxes where such payment is otherwise excused by the Bankruptcy Code.

(hh) "***Notice of Proposed Sale***" shall mean that notice of a proposed Sale in that form and substance as has been approved by the Bankruptcy Court.

(ii) "***Petition Date***" means April 1, 2025.

(jj) "***Plan Administrator***" shall mean _____.

(kk) "***Potential Purchaser***" means a person that has become a Registered Bidder or that has otherwise satisfied the Plan Administrator that such person has the financial wherewithal to consummate a Sale of the Auction Lot for which such person has expressed interest.

(ll) "***Proof of Claim***" shall mean the written statement of a creditor's claim as described in Bankruptcy Rule 3001.

(mm) "***Property***" shall mean real property and improvements located at 590 S Interstate, I-45, Ennis, Texas 75119.

(nn) "***Proposed Sale***" shall mean a proposed transfer of ownership, possession, control, and use of one or more of the Properties that has not yet been fully consummated.

(oo) "***Purchase and Sale Agreement***" shall have the meaning ascribed to such term in Section 6 of the Sale Procedures.

(pp) "***Purchase Price***" shall have the meaning ascribed to such term in Section 4 of the Sale Procedures or the price at which a proposed purchaser offers to purchase the Property during the Private Purchase Phase.

(qq) "***Registered Bidders***" shall mean those persons that have registered to bid at the Auction in accordance with the terms, conditions, and processes set forth in these Sale Procedures, each being a "***Registered Bidder***."

(rr) "***Retention Order***" an order of the Bankruptcy Court approving the terms of a Retention Agreement and authorizing the Debtor to enter into the same.

(ss) "***Sale***" shall mean a fully consummated transfer of the ownership, possession, control, and use of the Property, which, to the extent required by these Sale Procedures, has been approved by the Bankruptcy Court through the entry of a Sale Confirmation Order, in return for good and valuable consideration from a Buyer in accordance with a duly executed Purchase and Sale Agreement.

(tt)   "**_Sale Confirmation Hearing_**" shall have the meaning ascribed to such term in Section 16(c) of the Sale Procedures.

(uu)   "**_Sale Confirmation Order_**" shall mean an order of the Bankruptcy Court authorizing and directing the Debtor to consummate a Sale of one or more of the Debtor-Owned Properties to a Buyer pursuant to 11 U.S.C. § 363.

(vv)   "**_Sale Procedures_**" shall mean these _Terms, Conditions, and Procedures for the Sale of Certain Property Offered by Ennis I-45 11 Acre, LLC_.

(ww)   "**_Sale Procedures Order_**" shall mean that an order entered by the Bankruptcy Court approving the terms of these Sale Procedures.

(xx)   "**_Sale Process_**" means the process of soliciting and consummating a Sale pursuant to these Sale Procedures.

(yy)   "**_Secondary Deposit_**" shall have the meaning ascribed to such term in Section 7(b) of the Sale Procedures.

(zz)   "**_Secured Claim_**" means a Claim that has been scheduled or asserted through a timely filed Proof of Claim in the Debtor's Bankruptcy Case and is alleged to be secured by a Lien on the Properties; _provided that_, for the avoidance of doubt, the term "Secured Claim" shall not include any Claim, or part of a Claim, that has been Disallowed (including, without limitation, any Lien that is Disallowed or otherwise found to be invalid as stated or alleged).

(aaa)   "**_Secured Creditor_**" means the holder of a Secured Claim.

(bbb)   "**_Winning Bid_**" shall have the meaning ascribed to such term in Section 4 of the Sale Procedures.

(ccc)   "**_Winning Bidder_**" shall have the meaning ascribed to such term in Section 4 of the Sale Procedures.

2.   **The Plan Administrator.**

(a)   <u>Authority to Act</u>.  All authority to act on behalf of the Debtor in connection with the Auction, the consummation of any Sale through the Sale Process, or any other matter addressed in these Sale Procedures shall be exercised solely and exclusively by the Plan Administrator without any interference from any principal, employee, agent, or representative of the Debtor. In exercising such authority, the Plan Administrator shall have sole and absolute discretion; provided, however, the Plan Administrator shall not consummate any Sale through the Sale Process for a sale price of less than $5,801,041. No principal, employee, agent, or representative of the Debtor shall have any authority to act on behalf of the Debtor with respect to the Auction, the consummation of any Sale, the Sale Process, or any other matter addressed in these Sale Procedures. Counsel for the Debtor shall take direction solely from the Plan Administrator as it relates to the Auction, the consummation of any Sale, the Sale Process, or any other matter addressed in these Sale

Procedures. The Plan Administrator may employ or contract with such third parties as appropriate to assist in the implementation of these Sale Procedures. For the avoidance of doubt, the Plan Administrator shall be permitted – but not required – to consult with any party-in-interest, including the principles of the Debtor, any Professional retained by the Debtor, any Creditor, and/or any holder of an Equity Interest in Debtor with respect to the Sale Process (or any aspect thereof) and/or the carrying out of the Plan Administrator's obligations hereunder, including with respect to any decision to be made by the Plan Administrator under these Sale Procedures; *provided that*, for the avoidance of doubt, the decision of whether to consult with any party-in-interest shall be in the sole and absolute discretion of the Plan Administrator The authority to act given to the Plan Administrator in these Sale Procedures shall supplement, and shall not in any way limit, the authority and obligations of the Plan Administrator as set forth in the Plans.

(b)     <u>Limitation of Liability</u>.  Except for gross negligence or willful misconduct, the Plan Administrator shall not have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the Auction, the consummation of any Sale, or any other matter addressed in these Sale Procedures, or with respect to any contract or agreement entered into by the Plan Administrator or the Sellers with respect to the same. The exculpatory provisions and each limitation of liability in favor of the Plan Administrator in these Sale Procedures shall supplement, and shall not in any way limit, the exculpatory provisions and limitations of liability in favor of the Plan Administrator as set forth in the Plans.

3.     **Private Sale**: The Plan Administrator shall attempt to sell the Property through a private sale by using the Listing Broker to market the Property, using the following procedures:

(a)     The Plan Administrator shall have the authority to accept any offer for the Property that the Plan Administrator believes, in the Plan Administrator's sole discretion, results in the highest and best offer for the Property.

(b)     The Plan Administrator shall keep any Creditor with a Secured Claim reasonably apprised of offers received for the Property and the status of marketing and sale efforts.

(c)     A Creditor with an Allowed Secured Claim may make a Credit Bid for the Property, subject to the provisions hereof.

(d)     The Plan Administrator shall not accept an offer from a third party for the purchase of the Property unless the Plan Administrator has given each Creditor with a Secured Claim at least 48 business hours' notice of the offer the Plan Administrator intends to accept (including a copy of the proposed Purchase and Sale Agreement) and offers each such Creditor a reasonable chance to make a higher and better offer for the purchase of the Property.

(e)     If the Plan Administrator accepts an offer for the purchase of the Property, the offer shall be subject to approval by the Bankruptcy Court.  The Plan Administrator shall

file a motion with the Bankruptcy Court seeking approval of the Proposed Sale, which such motion shall attach a copy of the proposed Purchase and Sale Agreement.

(f)     If the Plan Administrator has not filed a motion seeking approval of a Proposed Sale within thirty (30) days from the Effective Date of the Plan (the "***Private Sale Phase***"), the Plan Administrator shall transition to selling the Property pursuant to the auction procedures set forth in Section 4 hereof.

**4.    <u>Auction Format</u>.**

(a)     <u>Auction</u>.  The Plan Administrator will offer the Property for sale at the Auction conducted by the Plan Administrator pursuant to these Sale Procedures.

(b)     <u>Auction Date and Location</u>.  The Auction shall be held as such date and time as the Bankruptcy Court may be set by subsequent order, at neutral location to be selected by the Plan Administrator, which shall be conducted as soon as reasonably practicable after the private sale period described in Section 3 hereof expires.

(c)     <u>No Reserve</u>.  The Auction shall be conducted as a no reserve auction.

(d)     <u>Auction Attendance</u>.  Only the Plan Administrator, the Debtor, the Registered Bidders, the United States Trustee, Creditors holding a Secured Claim, any counsel for the foregoing, and any other person that receives the written consent of the Plan Administrator shall be permitted to attend the Auction; *provided that*, notwithstanding the right of the foregoing persons to attend the Auction as set forth herein, the Plan Administrator shall be permitted to remove any person(s), including any of the foregoing person(s) that the Plan Administrator, in the Plan Administrator's sole and absolute discretion, determines is (i) unreasonably obstructing the Plan Administrator's efforts to conduct the Auction, or (ii) is otherwise engaging in conduct detrimental to the Auction process.

(e)     <u>Registered Bidders.</u>  Only a Registered Bidder may bid on the Property. To become a Registered Bidder, a bidder must (a) register with Plan Administrator; (b) agree to be bound by the terms of these Sale Procedures; (c) submit an Initial Deposit (as that term is defined herein); and (d) provide the Plan Administrator with information that may be reasonably requested to confirm each such bidder's financial wherewithal to consummate the proposed Sale.

(f)     <u>Submission of Bids</u>.  Each bid submitted by a Registered Bidder shall be an unqualified, irrevocable offer to purchase the Property with such bid in the amount of Cash identified in such bid (the "***Purchase Price***"), without any contingencies or conditions other than as expressly permitted hereby, subject only to being deemed Winning Bid by the Plan Administrator and the entry of any Sale Confirmation Order required by the terms of these Sale Procedures; *provided that*, to the extent that any part of the Purchase Price is being financed by a person other than the Registered Bidder, such financing must be committed financing from a

financially sound financier, which determination shall be in the sole and absolute discretion of the Plan Administrator, and shall not be subject to any contingencies.

(g)     Winning Bid(s).  The Plan Administrator, in its sole and absolute discretion, shall determine that bid, or combination of bids, expected to result in the highest Net Sale Proceeds being remitted to the Debtor's Estate and shall and announce the same at the conclusion of the Auction as the highest and best bid(s) (the "Winning Bid(s)"). Each Registered Bidder submitting a Winning Bid shall become a "Winning Bidder."

(h)     Backup Bids.  The bids that are not selected as the Winning Bid shall be ranked according to the Net Sale Proceeds expected to be remitted to the Debtor's Estate from such bid or the combination of such bid with other bids. The two (2) highest ranked bids or combinations of bids, other than the Winning Bid, shall remain open, valid, and irrevocable until the Closing of the Sale of the Auction Lot associated with such bid (collectively, the "Backup Bids," each being a "Backup Bid"); provided that if any other Registered Bidder(s) shall voluntarily designate their own bids as a Backup Bid(s), such bid(s) shall be deemed a Backup Bid(s) in accordance with the terms of these Sale Procedures and shall rank in priority as determined by the Plan Administrator in its sole and absolute discretion.

(i)     Plan Administrator Discretion.  In selecting the Winning Bid and Backup Bids, the Plan Administrator shall have sole and absolute discretion; provided that, nothing contained herein shall prevent the Plan Administrator from consulting with one or more of the parties in interest, including any Professional retained by the Debtor, any Creditor, or any Equity Interest holder; but further provided that any such consultation shall be at the Plan Administrator's sole and absolute discretion. Without limiting the foregoing, the Plan Administrator may consider, in addition to the Net Sale Proceeds expected to be remitted to the Debtor's Estate, the risk of default by one or more of the Registered Bidders.

(j)     Rejection of Bids.  Prior to the announcement of a Winning Bid, the Plan Administrator may reject any bid for any reason; provided that the Plan Administrator shall not be permitted to reject a Credit Bid submitted by a Secured Creditor.

5.    **No Representations or Warranties.**  The Property shall be sold "AS IS", "WHERE IS", "WITH ALL FAULTS", without representations, warranties, covenants or guarantees of any kind, nature, or description whatsoever; *provided that* nothing contained herein shall limit the relief that may be granted with respect to the Property by the Bankruptcy Court pursuant to 11 U.S.C. § 363. The Property shall be conveyed to the Purchaser or Winning Bidder(s), as is relevant, free and clear of all liens, claims, and encumbrances of any kind or nature whatsoever (collectively, the "***Transferred Encumbrances***"), with such Transferred Encumbrances to attach to the Net Sale Proceeds with the same validity and in the same order of priority as existed prior to the Sale. The Winning Bidder shall be deemed to acknowledge and represent that it has relied solely upon its own independent review, investigation and/or inspection of any documents and information in making its bid, and that it did not rely upon

8

any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property, or the completeness of any information provided in connection with the Property and/or the Sale Process (including each and every aspect thereof). Without limiting the "AS IS, WHERE IS" nature of the Sale, the Sale(s) shall be subject to, among other things, (a) any state of facts that an accurate survey may show, (b) any covenants, restrictions and easements of record, (c) any state of facts a physical inspection may show, (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof, and (e) environmental conditions, including without limitation, the Property's compliance or lack of compliance with environmental laws, and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the Property.

6. **Purchase and Sale Agreement.**  The submission of any offer during the Private Sale Phase or at Auction shall be deemed an irrevocable and binding commitment by a proposed purchaser or the Registered Bidder, as appropriate, to execute an agreement in a form and substance substantially similar to that attached hereto as Appendix A for the Property (the "***Purchase and Sale Agreement***") immediately upon such bid or offer being deemed the highest and best bid for the Property by the Plan Administrator, and shall be further the agreement that the failure of the Registered Bidder or proposed purchaser to immediately execute such Purchase and Sale Agreement shall result in the immediate and permanent forfeiture of all Deposits in accordance with the terms of Section 7(c) of these Sale Procedures; *provided that,* notwithstanding the foregoing, the Plan Administrator and the Registered Bidder or proposed purchaser shall be permitted to jointly make modifications to the Purchase and Sale Agreement as each may expressly agree to in writing; *but further provided that* any modifications to the Purchase and Sale Agreement must comply and be consistent with these Sale Procedures; *and further provided that*, for the purpose of determining whether a Purchase and Security Agreement is substantially similar to that attached as Appendix A, the determination of such issue by Plan Administrator, in its sole and absolute discretion, shall be binding on all persons.

7. **Deposits.**

   (a)   Initial Deposit.  Each person that desires to submit an offer for the Property during the Private Sale Phase and each bidder that desires to become a Registered Bidder must remit a good faith deposit in the amount of $50,000.000 dollars ($50,000.00) (each, an "***Initial Deposit***") to the Plan Administrator (or any person retained by the Plan Administrator for the purpose of holding such good faith deposits on behalf of the Plan Administrator).  During the Private Sale Phase, the Initial Deposit shall accompany any proposed offer for the purchase of the Property. At Closing, the Initial Deposit submitted by the Winning Bidder or proposed purchaser, as relevant, will be applied to the amount due from the Winning Bidder or proposed purchaser to consummate the Sale of the Property. During the Private Sale Phase, the Initial Deposit provided by a person seeking to purchase the Property shall be returned if the Plan Administrator rejects the offer. With respect to the Auction, the Initial Deposit submitted by a Registered Bidder that is not the Winning Bidder or a Backup Bidder will be returned to such Registered Bidder on or before the third (3rd) Business Day following the identification of the Winning Bidder and any

9

Backup Bidder(s); *provided that*, notwithstanding the foregoing, no breaching or defaulting Winning Bidder or proposed purchaser, which shall include breaching or defaulting Winning Bidder that was previously a Backup Bidder, shall be entitled to a return of their Initial Deposit, such breaching or defaulting proposed purchaser or Winning Bidder having completely and permanently relinquished, released, and waived any right to its Initial Deposit pursuant to Section 7(c) hereof.

(b)     Secondary Deposit.  A proposed purchaser making an offer that is accepted as the highest and best offer during the Private Sale Phase or any Registered Bidder that is named the Winning Bidder at the Auction shall remit to the Plan Administrator (or any person retained by the Plan Administrator for the purpose of holding such good faith deposits on behalf of the Plan Administrator), within three (3) Business Days of being so notified, a good faith deposit in the amount equal to fifty percent (50.00%) of its Winning Bid, less the Initial Deposit (each, a "***Secondary Deposit***" and, collectively with the Initial Deposit, the "***Deposits***," each a "***Deposit***"). At Closing, the Secondary Deposit submitted by the Winning Bidder or proposed purchaser will be applied to the amount due from the Winning Bidder or proposed purchaser to consummate the Sale of the Property. In the situation where the Bankruptcy Court conducts and finally concludes a Sale Confirmation Hearing and a Sale Confirmation Order is not subsequently entered, the Escrow Agent shall return each Deposit paid by the proposed purchaser or Winning Bidder within three (3) Business Days of the order denying confirmation of the Sale becoming a Final Order; *provided that*, notwithstanding the foregoing, no breaching or defaulting Winning Bidder or proposed purchaser, which shall include breaching or defaulting Winning Bidder that was previously a Backup Bidder, shall be entitled to a return of their Secondary Deposit, such breaching or defaulting proposed purchaser or Winning Bidder having completely and permanently relinquished, released, and waived any right to its Initial Deposit pursuant to Section 7(c) hereof.

(c)     Forfeiture of Deposits.  Notwithstanding anything to the contrary herein, including the naming of a Backup Bidder as the Winning Bidder after a breach by the prior Winning Bidder, any Registered Bidder, including any Winning Bidder(s) and Backup Bidder(s), or proposed purchaser that (i) breaches its obligations under a Purchase and Sale Agreement; or (ii) attempts to revoke its offer or bid (including any Winning Bid and/or Backup Bid) after or prior to the execution of a Purchase and Sale Agreement; or (iii) refuses to execute a Purchase and Sale Agreement, and/or any other agreement reasonably required to consummate the Sale of the Property, shall completely and permanently relinquish, release, and waive any right that such proposed purchaser or Registered Bidder had with respect to each of the Deposits remitted in connection with these Sales Procedures. Any forfeited Deposit shall be distributed under Plan in the same manner as the Net Sale Proceeds of the Property.

8.     **Due Diligence.** The Debtor shall use its best efforts to timely provide information regarding the Property reasonably requested by the Plan Administrator, a potential Purchaser, or a Registered Bidder. Due diligence access shall include access to onsite inspections, surveys,

title reports, professional property inspections, and such other matters which are reasonably available to Debtor.

9.  **Submission to Jurisdiction of the Bankruptcy Court.**  The Bankruptcy Court shall have exclusive jurisdiction over all matters related to the Sale Process.

10. **Credit Bidding.** A Secured Creditor that holds an Allowed Secured Claim shall be entitled to offset the amount of such Secured Claim against any amount due to the Debtor on account of bid(s) submitted by such Secured Creditor (each, a "***Credit Bid***") in accordance with the following:

    (a)    Subject to Section 10(f), a Secured Creditor may offset the amount due from such Secured Creditor for an Initial Deposit against its Secured Claim, *provided that* all offsets claimed by the Secured Creditor shall not exceed the amount of its Secured Claim. Each Initial Deposit so offset shall be treated the same as an Initial Deposit made in Cash; *provided that* any provisions of these Sale Procedures requiring the return of the Initial Deposit will be deemed to result in the offset being terminated and the offset amount of the Secured Creditor's claim being reinstated unless the original claim has been Disallowed by the Bankruptcy Court – but shall not result in the return of any cash to the Secured Creditor unless the Secured Creditor would have otherwise received a distribution of cash on account of an Allowed Secured Claim and, instead, such distribution was retained by the Debtor on account of the Credit Bid. If the Secured Claim associated with the Credit Bid is subsequently Disallowed, the party submitting such bid shall remit the amount of cash necessary (if any) to fully satisfy its obligations under the provisions of these Sale Procedures governing Initial Deposits within one (1) Business Day of such Claim being Disallowed; *provided that*, for the avoidance of doubt, a determination that a Secured Claim associated with a Credit Bid has been Disallowed in part shall not prohibit the Secured Creditor from relying on any Allowed Secured Claim, or Allowed portion of a Secured Claim, to offset the amounts due from the Secured Creditor for an Initial Deposit. Any person required to submit a Cash Initial Deposit pursuant to this Section 10(a) that fails to remit such Cash Initial Deposit shall be forfeit their rights as a Registered Bidder and/or Winning Bidder and shall further be liable to the Debtor, or the respective Seller of such Property/Properties if the requirement to submit a Cash Initial Deposit occurs post-Auction, for the full amount of such Initial Cash Deposit, plus interest at the same rate as applied to post-judgment interest under 28 U.S.C. § 1961 and all attorney fees incurred by the Plan Administrator and/or the Debtor in seeking recovery of the same.

    (b)    Subject to Section 10(f), a Secured Creditor may offset the amount due from such Secured Creditor for a Secondary Deposit against its Secured Claim, *provided that* all offsets claimed by the Secured Creditor shall not exceed the amount of its Secured Claim. Each Secondary Deposit so offset shall be treated the same as a Secondary Deposit made in Cash; *provided that* any provisions of these Sale Procedures requiring the return of the Secondary Deposit will be deemed to result in the offset being terminated and the offset amount of the Secured Creditor's claim being reinstated unless the original claim has been Disallowed by the Bankruptcy

Court – but shall not result in the return of any cash to the Secured Creditor unless the Secured Creditor would have otherwise received a distribution of cash on account of an Allowed Secured Claim and, instead, such distribution was retained by the Debtor on account of the Credit Bid. If the Secured Claim associated with the Credit Bid is subsequently Disallowed, the party submitting such bid shall remit the amount of cash necessary (if any) to fully satisfy its obligations under the provisions of these Sale Procedures governing Secondary Deposits within three (3) Business Days of such Claim being Disallowed; *provided that*, for the avoidance of doubt, a determination that a Secured Claim associated with a Credit Bid has been Disallowed in part shall not prohibit the Secured Creditor from relying on any Allowed Secured Claim, or Allowed portion of a Secured Claim, to offset the amounts due from the Secured Creditor for a Secondary Deposit. Any person required to submit a Cash Secondary Deposit pursuant to this Section 10(b) that fails to remit such Cash Secondary Deposit shall be forfeit their rights as a Winning Bidder and shall further be liable to the respective Seller of such Property/Properties for the full amount of such Cash Secondary Deposit, plus interest at the same rate as applied to post-judgment interest under 28 U.S.C. § 1961 and all attorney fees incurred by the Plan Administrator and/or the Debtor in seeking recovery of the same.

(c)     Subject to Section 10(f), a Secured Creditor may offset the amount due from such Secured Creditor at the closing of the Sale of the Property against its Allowed Secured Claim, *provided that* all offsets claimed by the Secured Creditor shall not exceed the amount of its Allowed Secured Claim. If the Secured Claim associated with the Credit Bid is subsequently Disallowed, the party submitting such bid shall remit the amount of cash necessary (if any) to fully satisfy its obligations under the provisions of these Sale Procedures within three (3) Business Days of such Claim being Disallowed; *provided that*, for the avoidance of doubt, a determination that a Secured Claim associated with a Credit Bid has been Disallowed in part shall not prohibit the Secured Creditor from relying on any Allowed Secured Claim, or Allowed portion of a Secured Claim, to offset the amounts due from the Secured Creditor under these Sale Procedures and/or any Purchase and Sale Agreement executed in connection herewith. Any person required to submit Cash in connection with their respective obligations under these Sale Procedures and/or any Purchase and Sale Agreement executed in connection herewith pursuant to this Section 10(c) that fails to remit such Cash shall be liable to the respective Seller of such Property/Properties for the full amount of Cash due pursuant to this Section 10(c), plus interest at the same rate as applied to post-judgment interest under 28 U.S.C. § 1961 and all attorney fees incurred by the Plan Administrator and/or the Debtor in seeking recovery of the same.

(d)     Except as otherwise stated herein, each Credit Bid shall be treated in the same manner as a Cash bid. For the avoidance of doubt, the amount of the secured debt so bid as a Credit Bid shall be deemed to be the "Purchase Price" with respect to such Credit Bid; *provided that* if the total bid submitted by a Secured Creditor exceeds the Credit Bid portion of such bid, then the "Purchase Price" with respect to such bid shall be the total amount of the bid.

12

(e)     Notwithstanding anything to the contrary herein, each Secured Creditor is automatically deemed a Registered Bidder.

**11.   <u>Challenges to Proposed Sale.</u>**

(a)     <u>Notice of Proposed Sale</u>.  If the Plan Administrator proposes to sell the Property through a private sale during the Private Sale Phase, any challenges to the proposed sale shall be made through an objection to the motion filed by the Plan Administrator, in accordance with the Federal Rules of Bankruptcy Procedure.  The following procedures shall apply if the Property is sold at Auction.

(i)     On the date of the Auction, after the conclusion thereof, the Debtor or Plan Administrator shall file a Notice of Proposed Sale in that form and substance as has been approved by the Bankruptcy Court.

(ii)    Any person that is not signed up to receive email service through the Bankruptcy Court's ECF system, and who is not otherwise required to receive service of the Notice of Proposed Sale under these Sale Procedures, may obtain a copy of the Notice of Proposed Sale by requesting the same from Counsel for Bay Point. Persons requesting the Notice of Proposed Sale prior to the Auction Date shall receive a copy of the Notice of Proposed Sale as follows: (A) persons requesting that Notice of the Proposed Sale be sent to them via email shall receive a copy via email on the later of (I) the date of Auction, after the conclusion thereof; and (II) the date that such person requests the Notice of Proposed Sale; and (B) the Bay Point or the Debtor shall mail, via overnight mail, the Notice of Proposed Sale to such persons requesting that Notice of the Proposed Sale be sent to them via physical mail on the later of (1) the date of Auction, after the conclusion thereof; and (2) the date that such person requests the Notice of Proposed Sale. Any person not identified under Section 16(a)(i) of these Sale Procedures that does not request a copy of the Notice of Proposed Sale in accordance with this Section shall not receive any notice of the Proposed Sale.

(b)     <u>Deadline for Filing Objection to Proposed Sale - Auction</u>.  Any person objecting to a proposed Sale pursuant to the terms of these Sale Procedures shall file an objection with the Bankruptcy Court at or before **twenty one days after the filing of the Notice of Proposed Sale**, or such other date and time as the Bankruptcy Court may be set by subsequent order, and immediately serve a copy of the same by email and overnight mail on the Debtor and all other parties-in-interest.

(c)     <u>Hearing on Objection to Proposed Sale - Auction</u>.  The Bankruptcy Court will schedule a hearing on the proposed sale to the Winning Bidder.  The Debtor's ability to consummate such proposed Sale will be contingent upon the Debtor(s) receiving a Sale Confirmation Order from the Bankruptcy Court after the Sale Confirmation Hearing. Notwithstanding such contingency on the part of the Debtor(s), each Winning Bid and each Backup Bid shall remain irrevocable.

(d)     <u>No Objection to Proposed Sale</u>. **Notwithstanding anything to the contrary herein, if no timely objection is filed to a Proposed Sale, the Bankruptcy Court may enter one or more Sale Confirmation Orders without holding a Sale Confirmation Hearing.**

12.   **<u>Closing of the Sale(s)</u>.**

    (a)     **<u>Time is of the Essence. Time is of the essence with respect to all of the actions and deadlines set forth in these Sale Procedures, including, without limitation, those actions and deadlines relating to the closing of the Sale(s).</u>**

    (b)     <u>Closing Place</u>.  Closing shall take place at such location as may be mutually agreed upon by the Plan Administrator and the Winning Bidder.

    (c)     <u>Closing Date</u>.  Closing shall take place within five (5) Business Days of the entry of a Sale Confirmation Order, or such later date as may be ordered by the Bankruptcy Court (in either instance, the "***Closing Deadline***"); *provided that* the Closing Deadline shall be extended to permit a Secured Creditor whose Secured Claim has not been Allowed to seek a Final Order determining such Secured Claim Allowed.

    (d)     <u>Sale to Backup Bidder</u>.  In the event that the Winning Bidder breaches its obligations under these Sale Procedures and/or the Purchase and Sale Agreement, or otherwise fails to consummate the proposed Sale, through no fault of the Sellers, the Sellers shall sell the Auction Lot to the Backup Bidder with the next highest and best bid, such Backup Bidder becoming the Winning Bidder and its bid becoming the Winning Bid, without further approval of the Bankruptcy Court. The Sellers may exercise their rights under this provision immediately upon a breach or default by the Winning Bidder or and at any time up until Closing of the Sale of the respective Auction Lot. Notwithstanding anything to the contrary herein, a bidder's breach of its obligations under the Purchase and Sale Agreement shall result in a complete forfeiture of all rights, claims, and interest in any Deposit submitted by such bidder and shall subject such bidder to such other damages, claims, defenses, and remedies as such Seller may have under the Purchase and Sale Agreement and/or applicable law.

    (e)     <u>Return of Backup Bidder Initial Deposits</u>.  Within five (5) Business Days of Closing the Sale, the Escrow Agent shall return the Initial Deposit submitted by the Backup Bidder(s); *provided that* any Backup Bidder that was subsequently named a Winning Bidder shall not be entitled to a return of its Initial Deposit; *and further provided that,* notwithstanding the foregoing, no breaching or defaulting Backup Bidder shall be entitled to a return of their Initial Deposit, such breaching or defaulting Backup Bidder having completely and permanently relinquished, released, and waived any right to its Initial Deposit pursuant to Section 7(c) hereof.

    (f)     <u>Transfer of Possession</u>.  Debtor shall turnover possession of the Property at the Closing of the Sale with respect to the same to the respective Buyer or its designee,

together with all files and records pertaining to the Property, including, but not limited to construction documents, building permits, violations, architectural plans, leases and repair invoices to the extent that any such documents exist within the possession, custody, or control of such Debtor at that time.

*[Form of Purchase and Sale Agreement*

*To be supplemented*